Roger S. **TOTEMOFF**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. A–1751.

Court of Appeals of Alaska.

July 2, 1987.

---

Alex Swiderski, Asst. Public Defender, Palmer, and Dana Fabe, Public Defender, Anchorage, for appellant.

Steven H. Morrissett, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Palmer, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and TUNLEY, Superior Court Judge.[*]

## OPINION

SINGLETON, Judge.

Roger S. Totemoff pled no contest and was convicted of one count of sexual assault in the first degree, an unclassified felony. AS 11.41.410(a)(1). The maximum penalty is thirty years' incarceration. AS 12.55.125(i). Presumptive terms are respectively: eight years for a first-felony offender, fifteen years for a second-felony offender, and twenty-five years for a third-felony offender. AS 12.55.125(i)(1), (3), and (4). As a second-felony offender, Totemoff was subject to a fifteen-year presumptive term.

Superior Court Judge Beverly W. Cutler concluded that no mitigating factors applied to Totemoff's case. *See* AS 12.55.-155(d). She determined, however, that imposition of a fifteen-year sentence would be manifestly unjust when compared to the ten-year sentence received by Totemoff's juvenile codefendant, D.E.P. Judge Cutler reasoned that the ten-year sentence received by D.E.P. accurately reflected the seriousness of the offense and, but for Totemoff's prior felony conviction, would have been appropriate for him as well. In Judge Cutler's view, Totemoff's prior felony conviction warranted some additional time but, because of its relative insignificance, did not justify seven years more than the presumptive term for a first-felony offender. She therefore referred the matter to a three-judge sentencing panel. AS 12.55.165–.175. The three-judge sentencing panel held a hearing, heard from Totemoff and counsel, and concluded that the fifteen-year sentence was not manifestly unjust. It therefore remanded the matter to Judge Cutler for imposition of the fifteen-year sentence. Judge Cutler imposed the presumptive term.

Totemoff appeals, contending that the three-judge panel erred in failing to fully consider the proposed mitigating factor suggested by Judge Cutler, *see, e.g., Smith v. State,* 711 P.2d 561, 569–70 (Alaska App. 1985), and in failing to find that the resulting fifteen-year sentence was manifestly unjust. *Lloyd v. State,* 672 P.2d 152, 154 (Alaska App.1983). We affirm.

## THE OFFENSE

Totemoff's offense was considered in our recent decision in *D.E.P. v. State,* 727 P.2d 800 (Alaska App.1986).

It appears that Totemoff and D.E.P. initially contacted L.D. at about 9:00 p.m., May 1, 1985, and asked her for a ride downtown. L.D. refused this request as her children were in bed. Totemoff and D.E.P. then attempted to sell her a .22 caliber rifle but she did not have the money to purchase it. She gave them two kittens, and they left the residence and went drinking. During this time D.E.P. apparently sold the rifle.

The next morning, at approximately 1:00 a.m., Totemoff and D.E.P. returned and awoke L.D. by knocking on the door. They told her they wanted more kittens to sell. She told them to leave, and went back to sleep. Shortly thereafter, they knocked on the door, and when L.D. did not respond, they pushed the door open and entered. They told her they had a gun and would kill her children if she did not cooperate. To-

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

temoff apparently made initial contact and began fondling L.D. When she resisted, he told D.E.P. to "go up and take care of the kids." L.D. stopped resisting and Totemoff undressed her.

D.E.P. then raped L.D. anally and vaginally several times while Totemoff sat and watched. Once, when L.D. obtained permission to go upstairs to quiet her screaming children, Totemoff accompanied her upstairs. He then told her, "let's go," and they went back downstairs where the sexual abuse resumed.

L.D. was forced to perform oral sex on Totemoff while D.E.P. subjected her to anal intercourse. Finally, Totemoff forced L.D. to lie on the floor while he raped her vaginally.

## THE OFFENDER

Totemoff was born on January 24, 1961, and was twentyfour years of age at the time of the instant offense. Totemoff dropped out of school in the tenth grade. He has never completed high school nor obtained a G.E.D. Totemoff has never served in the armed forces of the United States and has never been married. His employment history consists primarily of seasonal work with fish canneries. He has no particular job skills. A review of the record indicates that Totemoff is an alcoholic.

Totemoff's criminal record consists of one felony conviction for burglary in the second degree, and two misdemeanor convictions for assault committed when he was under the influence of alcohol. Both assault convictions occurred in April 1980. The first offense involved an altercation with a neighbor whom Totemoff beat with his fists. The second incident occurred when Totemoff was visiting J.C. Penney & Co.'s department store in Anchorage. A security guard allegedly accosted him and accused him of taking something from the store, and Totemoff struck the security guard with his fist and fled.

Totemoff's felony conviction involved an incident which occurred in Kodiak on February 8, 1983. Totemoff broke the window in a liquor store, gained entry, and stole four bottles of Southern Comfort and one six-pack of Coca Cola. He returned the following day and confessed to the store clerk who summoned the police. It was determined that Totemoff stole $44.86 worth of merchandise and caused $367.50 damage to the store, for a total loss of $412.36.

It was initially determined that Totemoff should be enrolled in the Diversion Program for his burglary offense. He signed an agreement whereby he promised to maintain monthly contact with a diversion officer, complete thirty-two hours of community service, and pay restitution in the amount of $411.60. Totemoff was terminated from the Diversion Program when he failed to maintain any contact with the officer, failed to do any community service, and made no attempt to pay any restitution. Prosecution was reinstated, and Totemoff pled no contest to the offense.

Totemoff appeared for sentencing on the burglary on March 27, 1984. He received a suspended imposition of sentence for a period of three years and was placed on probation for the three years. Special conditions of probation required that he serve 115 days in jail, which apparently he had already served, and, in addition, participate in an in-patient ninety-day alcohol program at Haven of Rest Home for Offenders, followed by out-patient treatment at the Clithroe Alcohol Treatment Out-Patient Program. He was also ordered to pay restitution, to refrain from possessing or using alcohol, and to be monitored periodically by T.A.S.C.

The state petitioned to revoke Totemoff's probation on April 6, 1984, for consumption of alcohol. As a result of the ensuing hearing, Totemoff was required to enter the Clithroe in-patient program. On July 5, 1984, a second petition to revoke probation was filed, alleging that Totemoff had left the Clithroe Center without permission and consumed alcohol. At a hearing on July 19, 1984, Totemoff's probation was revoked and the suspended imposition of sentence was vacated. Totemoff was sentenced to serve two years with credit for the 163 days already served. In addition, six

months of the sentence were suspended, and the defendant was placed on further probation. Totemoff was released from incarceration on April 3, 1985, and was to remain under supervised probation until July 19, 1986. Fewer than thirty days after his release from incarceration, Totemoff committed the instant offense.

## THE SENTENCE

Judge Cutler held a joint sentencing hearing for D.E.P. and Totemoff. Prior to the hearing, Totemoff filed a notice of proposed mitigating factors, and a request that the case be referred to a three-judge panel for sentencing.

Totemoff argued four mitigating factors. First, that the offense was principally accomplished by another person, and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim, AS 12.55.155(d)(1); second, that the defendant, although an accomplice, played only a minor role in the commission of the offense, AS 12.55.155(d)(2); third, that the defendant assisted authorities to detect or apprehend other persons who committed the offense with the defendant, AS 12.55.155(d)(12); and, fourth, that the facts surrounding the commission of the offense and any previous offenses by the defendant established that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment, AS 12.55.155(d)(13).[1] Judge Cutler rejected these mitigating factors. She noted that D.E.P. did instigate the offense, but concluded that on balance it was a joint venture in which neither D.E.P. nor Totemoff substantially influenced the other, and in which both took an active part. Judge Cutler specifically rejected Totemoff's contention that he had manifested extreme caution or sincere concern for the safety or well-being of the victim. Judge Cutler largely credited the accuracy of L.D.'s testimony before the grand jury as descriptive of the event. In Judge Cutler's view, To-

temoff's contention that he manifested extreme caution for the victim was "laughable." Judge Cutler expressed greater concern for Totemoff's fourth alleged mitigating factor. She said:

As to his fourth mitigator I think this [is] the one he comes closest to proving but I don't think he proves it by the correct standard [clear and convincing evidence], that the offenses in his criminal history and this offense are minor and inconsistent with the significant penalty that he's facing. The problem for him proving that is that the statute is in the conjunctive and he has to prove that the facts surrounding the commission of this offense and any previous offenses establish that the harm caused by his conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment. Clearly the facts surrounding the commission of his previous offenses and even his probation revocation, but particularly the previous offense which I understand was a burglary of a liquor store after hours where he store [sic] four bottles of booze and a 6-pack of Coke or something like that. That is—while that is felonious conduct it is clearly minor and inconsistent with the imposition of a 15 year term using that as his prior felony. But the statute requires them to prove that the facts surrounding the commission of this offense and the previous offense or offenses be consistently minor and inconsistent with the imposition of a substantial period of imprisonment. Clearly the facts surrounding the commission of this offense are just the opposite. They are absolutely consistent with the imposition of a substantial period of imprisonment, particularly for the reason that the rape or rapes went on for some period of time and this is not a criminal offense that involves 5 minutes of indiscretion while someone is drunk.... So I think there's no question here that the facts surround-

---

1. This notice of mitigating factors superseded an earlier notice filed on October 2, 1985. In that notice, Totemoff argued that "the conduct constituting the offense was among the least

serious conduct included in the definition of the offense." AS 12.55.155(d)(9). This alleged mitigating factor was abandoned in Totemoff's supplemental notice.

ing the commission of this offense are consistent with the imposition of a substantial period of imprisonment. So I find he has not proved any of the 4 alleged statutory mitigators.

Based in part on her concern regarding the fourth mitigating factor, however, Judge Cutler did elect to refer the case to a three-judge panel for sentencing. Judge Cutler considered and rejected some non-statutory mitigators proposed by Totemoff, that he was a follower not a leader, and that his confession should mitigate his punishment. Judge Cutler was convinced, however, that a nonstatutory mitigator should apply:

[Totemoff] argued that this court should consider that his one prior felony was of a far less serious category of offense. It obviously was a C felony but as I've commented already previously it was a fairly minor felony as felonies go. It was an after hours breaking into a liquor store and the stealing of 4 bottles of booze and a 6–pack of Coke, the kind of activity that unfortunately—or fortunately depending on the way you look at it—is sometimes even treated as a misdemeanor. He did not do well on probation, in fact he didn't do well on probation at all but as [defense counsel] pointed out the times that the judge revoked his probation was because he couldn't control his alcohol use. He never committed even a trespassing offense. He didn't commit any other offenses so it does appear to me anyway that it is somewhat unfair to say that the only reason Mr. Totemoff would get 15 years and [D.E.P.] would get 8 years is that Mr. Totemoff once burglarized a liquor store and took 4 bottles of booze and a 6–pack of Coke. That might fairly result in a difference of two or three years on his sentence but that it should result in nearly double the sentence for acts that this court has found were fairly similar even though the court agrees that Mr. Totemoff was in a sense a secondary player. We have to label somebody the primary player and somebody the secondary player. That that does seem manifestly unjust that this court cannot con-

sider that the prior felony was not a B felony or an A felony or [an] unclassified felony, but that it was a C felony and what kind of C felony it was in deciding what is a fair sentence. So I do agree to send Mr. Totemoff's case to a 3–judge panel so they can determine whether I can consider the fact that his prior felony was a minor felony and was far less serious than this in deciding whether to give him the 15 years or something less than the 15 years. Other than that I don't think this court has the discretion to give Mr. Totemoff other than the 15 year sentence. So the court will cause the paperwork to be done then to transmit this to the 3–judge panel solely for that one determination.

The case was referred to a three-judge panel consisting of Superior Court Judge Brian C. Shortell, presiding, Superior Court Judge Rene J. Gonzalez, and Appeals Court Judge Robert G. Coats. After hearing from Totemoff and counsel, the three-judge panel declined to find manifest injustice. Speaking through Judge Shortell, the court concluded:

We're going to accept [the victim's grand jury testimony] as a true statement of the offense and we feel that the facts of this offense are very important in coming to our decision, that the facts are as the victim related them in her grand jury testimony. The facts of this offense indicate that it was one of the more serious of this type of offense. We consider it to be, not in the statutory sense but in the very real sense, an aggravated rape. And the reason that we do that is because the defendant and his accomplice terrorized the victim, they terrorized her children, they degraded her in a number of different ways, they assaulted her sexually repeatedly in various ways and the duration of the assault was a period of hours, not a short period. So we consider this to be above the mid level of seriousness of this offense—type of offense. The defendant has two prior assault misdemeanor convictions and one prior felony burglary conviction. Those convictions were committed in a period of

5 years beginning in 1980. His record on the prior convictions with regard to rehabilitation is extremely poor. He was given a number of chances to reform his behavior and he failed repeatedly. This offense was committed very shortly after his release from jail on the prior burglary. He's an alcoholic. His alcoholism has led to repeated assaultive and criminal behavior and we find—we conclude from all of these facts that are available to us that his rehabilitation prospects, in spite of the fact that he may sincerely be able to say to us here that he is trying to work on his problem, his rehabilitation prospects are extremely poor. We feel that he needs to be confined to protect the public. We feel he needs to be confined—to be given a very stiff sentence to deter others and himself from future offenses and we feel the need to voice condemnation of his conduct and reaffirm societal norms by means of this sentence. With regard to the specific arguments he's made about the prior burglary, we find that the fact that his prior burglary wasn't as serious as this offense doesn't convince us that manifest

injustice would result from imposition of the presumptive term of 15 years. There are very few offenses that wouldn't be less serious than this offense. There was a very short period of time between the burglary and the present offense. He served a substantial amount of time on the burglary and it doesn't seem to have deterred him from future criminal conduct. And his alcoholism does not mitigate the seriousness of this offense or make him any less a danger to the public than he might be if he didn't drink. In fact it's just the other way around. For all of these reasons we conclude that manifest injustice would not result from imposition of the presumptive term of 15 years and we therefore remand the case to the trial court for sentencing in accord with the presumptive sentencing scheme.

## DISCUSSION

This case was referred by the trial court to a three-judge sentencing panel for sentencing pursuant to AS 12.55.165,[2] and AS 12.55.175.[3] A hearing was conducted pursuant to the appropriate rule. Alaska

2. AS 12.55.165 provides:
   *Extraordinary circumstances.* If the defendant is subject to sentencing under AS 12.55.-125(c), (d)(1), (d)(2), (e)(1), (e)(2), or (i) and the court finds by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors, the court shall enter findings and conclusions and cause a record of the proceedings to be transmitted to a three-judge panel for sentencing under AS 12.55.175.

3. AS 12.55.175 provides:
   *Three-judge sentencing panel.* (a) There is created within the superior court a panel of five superior court judges to be appointed by the chief justice in accordance with rules and for terms as may be prescribed by the supreme court. Three judges of the panel shall be designated by the chief justice as members. The remaining two judges shall be designated by the chief justice as first and second alternates to sit as members in the event of disqualification or disability in accordance with rules as may be prescribed by the supreme court.

(b) Upon receipt of a record of proceedings under AS 12.55.165, the three-judge panel shall consider all pertinent files, records, and transcripts, including the findings and conclusions of the judge who originally heard the matter. The panel may hear oral testimony to supplement the record before it. If the panel finds that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors, it shall sentence the defendant in accordance with this section. If the panel does not find that manifest injustice would result, it shall remand the case to the sentencing court, with a written statement of its findings and conclusions, for sentencing under AS 12.55.125.
(c) The three-judge panel may in the interest of justice sentence the defendant to any definite term of imprisonment up to the maximum term provided for the offense or to any sentence authorized under AS 12.55.015.
(d) Sentencing of a defendant or remanding of a case under this section shall be by a majority of the three-judge panel.

R.Crim.P. 32(e).[4] Our task is to determine whether the three-judge panel was clearly mistaken in determining that a fifteen-year presumptive sentence was not manifestly unjust. *See Heathcock v. State,* 670 P.2d 1155, 1158 (Alaska App.1983) (Singleton, J., concurring and dissenting).

The question, whether the imposition of a presumptive sentence is manifestly unjust, is divisible into two parts. *See Dancer v. State,* 715 P.2d 1174, 1177 (Alaska App. 1986). In one part, the court must determine whether the sentence, taking into account all of the appropriate sentencing considerations, including the defendant's background, his education, his character, his prior criminal history, and the seriousness of his offense, would be obviously unfair in light of the need for rehabilitation, deterrence, isolation, and affirmation of community norms. *Id. See also State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970). This facet of the three-judge panel's responsibility is discussed in *Lloyd v. State,* 672 P.2d 152, 154 (Alaska App.1983), and is analogous to the responsibility reviewing courts had under former law to determine whether sentences imposed by trial courts were clearly mistaken. *Dancer,* 715 P.2d at 1177. Essentially, it involves a comparison of the defendant, his background, and the seriousness of his offense with sentences received by similarly situated defendants convicted of comparable offenses. *See also Pears v. State,* 698 P.2d 1198, 1202–04 (Alaska 1985).

Evaluating Totemoff's case in light of the *Chaney* criteria, we find that the three-judge panel was not clearly mistaken in concluding that a fifteen-year sentence for Totemoff was not manifestly unjust. The

4. Alaska Criminal Rule 32(e) provides:
*Sentencing Referrals to Three-Judge Panel.*

(1) If the trial court finds that extraordinary circumstances exist under AS 12.55.165, the case shall be transferred forthwith to a three-judge sentencing panel of the superior court. All pertinent files, records and transcripts shall be transmitted to the sentencing panel by the clerk of the court within 30 days of the date of the order transferring the case.

(2) Three judges of the superior court shall be appointed by the chief justice to be the regular members of the sentencing panel. Two other judges of the superior court shall be appointed by the chief justice as first and second alternate members of the sentencing panel. At least one of the three regular members and one of the two alternate members of the sentencing panel shall reside outside of Anchorage. The term of appointment of the regular and alternate members of the sentencing panel shall be two years, except that the first three regular members appointed shall serve staggered terms of one, two, and three years. The chief justice may appoint additional alternate members of the sentencing panel to serve on a case-by-case basis in the event of the disability or disqualification of more than two judges.

(3) The chief justice shall appoint one of the three regular members to be administrative head of the sentencing panel and his or her office shall serve as the administrative repository for all papers and documents pertaining to cases submitted to the sentencing panel.

(4) Both the prosecuting attorney and the defendant may exercise in a timely fashion a challenge for cause, or a peremptory challenge if not previously exercised, to one judge on the sentencing panel in accordance with AS 22.20.022 and Rule 25(d)(1), Alaska Rules of Criminal Procedure. In the event that a judge on the sentencing panel is the same judge who made the finding under subsection (1) of this rule, that judge shall be automatically disqualified.

(5) The sentencing panel shall either sentence the defendant or remand the case to the court within 60 days from the date that the case was transmitted to the sentencing panel. The sentencing panel shall provide a written statement of its findings and conclusions in support of any order remanding a case to the trial court.

(6) If the sentencing panel elects to take testimony or sentence the defendant under AS 12.55.175(b) or (c), both the prosecution and the defendant shall have the right to be present in court during the proceedings. The defendant shall have the right to address the sentencing panel personally before sentence is imposed. The proceedings shall be held in a location best suited to the convenience of the parties and the court as determined by the sentencing panel.

(7) If the three-judge sentencing panel imposes sentence on the defendant, any further sentencing proceedings, including proceedings relating to sentence modification, shall occur before the same three-judge panel, who shall be considered the sentencing court. If at the time further proceedings are requested any of the three judges is no longer available, one or more alternate members shall sit in the same fashion as provided for in AS 12.55.-175(a).

(8) The right to bail of a convicted defendant is neither conferred nor enlarged by this rule.

premeditated nature of the assault, the fact that it was conducted by two people, the fact that the victim and her children were terrorized, the duration of the offense, and the multiple incidents of sexual assault, coupled with Totemoff's prior felony conviction and his failures on probation, establish that a fifteen-year sentence would not have constituted a clearly mistaken sentence under prior law. *See, e.g., Coleman v. State,* 621 P.2d 869, 883–86 (Alaska 1980), *cert. denied,* 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981); *Moore v. State,* 597 P.2d 975 (Alaska 1979). A fifteen-year sentence falls within the range of sentences imposed on similar defendants for similar conduct. *Coleman,* 621 P.2d at 886 n. 30.

Totemoff rests his case primarily on the second basis for a finding that a presumptively imposed sentence would be manifestly unjust. *See, e.g., Smith v. State,* 711 P.2d 561, 567–70 (Alaska App.1985). Totemoff argues that the three-judge panel gave insufficient consideration to a nonstatutory mitigating factor recommended by Judge Cutler, *i.e., that his prior felony conviction was only a class C offense and was among the least serious of second-degree burglaries. We are satisfied that the three-judge panel did not err in its treatment of this factor.*

It is not clear that the proposed nonstatutory mitigating factor was appropriate. Apparently Judge Cutler was in effect combining a current statutory mitigating factor with a former (repealed) mitigating factor to create a hybrid factor. *See* former AS 12.55.155(d)(8) (the mitigating factor that his prior felony conviction of burglary was a less serious class of offense than the present offense of first-degree sexual assault) and AS 12.55.155(d)(13) (the facts surrounding the commission of the offense and any previous offenses by the defendant establish that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment). Use of

these factors poses problems which we addressed in part in *Dancer,* where we said:

The three-judge panel's authority to establish new aggravating and mitigating factors constitutes a legislative recognition of the court's common law power to develop the law subject to legislative and constitutional limitations. *See* AS 01.10.010. Of course, any common law decision establishing a new aggravating or mitigating factor is subject to reconsideration by the legislature. It is unlikely that the panel would accept a new factor if that factor had already been expressly considered and rejected by the legislature. *Cf.* AS 12.55.155(g) (voluntary alcohol or drug intoxication or chronic alcoholism or other drug addiction may not be considered an aggravating or mitigating factor).

*Dancer,* 715 P.2d at 1178 n. 3 (citation omitted).

The legislature expressly repealed AS 12.55.155(d)(8), which suggests to us that it was not to be an appropriate consideration in sentencing.[5] Further, as Judge Cutler recognized, AS 12.55.155(d)(13) requires that the trial court look not only at the defendant's past conduct but also at the relationship between that past conduct and his present offense. As Judge Cutler pointed out in rejecting the mitigating factor, Totemoff's current offense involved very serious conduct, justifying a serious sanction.

In summary, a trial court should not propose a nonstatutory mitigating factor to the three-judge panel where the legislature specifically rejected that factor for inclusion in AS 12.55.155(d). Where the legislature has expressly addressed a consideration, such as the relationship between a defendant's past conduct and his present offense, and imposed limitations on the trial court's power to consider that relationship in mitigation of sentence, the trial court should not propose the same mitigating factor to the three-judge panel without complying with the limitations; to do so is

---

**5.** "The intent in repealing this mitigating factor is to avoid 'rewarding' a criminal for increasing the seriousness of his acts during his career."

House Journal Supplement No. 63 at 19, 1982 House Journal 2356.

to suggest a common law development inconsistent with legislation. *See* AS 01.10.-010.

In reaching these conclusions, it is important to differentiate between the two discrete bases upon which a presumptive sentence may be deemed manifestly unjust. Certainly the trial court, in determining whether to refer a case to a three-judge panel under the *Lloyd* prong of the test, may consider the extent to which the defendant's proof of mitigating factors falls short of success. Thus, if a defendant comes close to establishing a number of mitigating factors but fails to do so, the trial court may consider that fact, together with the totality of the circumstances, in determining that the presumptive sentence, irrespective of aggravating and mitigating factors, is manifestly unjust. Where, however, the trial court does not consider the presumptive term manifestly unjust, but rather wishes the three-judge panel to consider nonstatutory mitigating factors, it should not propose factors which the legislature has considered and rejected or modified to the point where they are unavailable to the defendant.

There is an independent basis for affirming the decision of the three-judge panel. Even if it were appropriate for the three-judge panel to have considered former AS 12.55.155(d)(8) in this case, it would not have been error for the three-judge panel to decline to modify the presumptive sentence. As we have previously recognized, former AS 12.55.155(d)(8) required the trial court to consider whether the defendant's prior conviction and resulting sentence sufficiently brought home to him the seriousness of his conduct and the need to modify his behavior, and permitted the court sentencing him for his second-felony offense to be satisfied that it understood the defendant's amenability for rehabilitation, and to consider the extent to which that defendant could be deterred by a short sentence of imprisonment. *Staael v. State,* 697 P.2d 1050, 1057–58 (Alaska App.1985), *aff'd,* 718 P.2d 948 (Alaska 1986).

In *Staael,* we noted that a defendant's past criminal record and experience with the criminal justice system is less significant in sentencing for crimes against the person than it is in sentencing for crimes against property, where deterrence of others and affirmation of community norms are more significant standards. 697 P.2d at 1058. That is certainly the case here. Further, as the sentencing panel pointed out, Totemoff served over a year's imprisonment for his prior felony by virtue of his various probation revocations. *See, e.g., Ecklund v. State,* 730 P.2d 161, 164 (Alaska App.1986) (purpose of the one year in prison requirement for labeling a second offender a habitual offender is to insure that he has been given adequate notice that his conduct is deemed serious). Thus, Totemoff's ability to be deterred by a significant period of imprisonment has been tested. In addition, as the three-judge panel points out, despite substantial attention by the criminal justice system, Totemoff appears unable to seriously address his alcohol problem, and is unwilling to participate in rehabilitative programs on probation. Thus, his amenability to rehabilitation has been tested.

For the foregoing reasons we conclude that the three-judge panel was not clearly mistaken in concluding that a fifteen-year presumptive sentence for Totemoff was not manifestly unjust.

The judgment of the superior court is AFFIRMED.

COATS, J., not participating.